NOT DESIGNATED FOR PUBLICATION

No. 126,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

LOUIS A. NAVA RAMIREZ,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Oral argument held April 9, 2024. Opinion filed April 26, 2024. Affirmed.

*Brian Deiter*, assistant district attorney, *Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Madeline Calcagno* and *Sam Allison-Natale*, of Kansas Holistic Defenders, of Lawrence, for appellee.

Before HILL, P.J., SCHROEDER, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM:  The State appeals from the district court's order granting Louis A. Nava Ramirez immunity from prosecution for domestic battery and involuntary dismissal of the charge under K.S.A. 2022 Supp. 21-5231 based on its finding Ramirez reasonably acted in self-defense under K.S.A. 2022 Supp. 21-5222(a). For the reasons explained herein, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2022, Sierra Hoyer-Chessher and Ramirez got into an argument in Sierra's apartment that eventually escalated to a physical conflict. Sierra and Ramirez were dating at the time, and Sierra instigated an argument with Ramirez because Ramirez had contact with his ex-wife. Sierra was very angry with Ramirez during the argument, but the two attempted to talk things out. Sierra eventually asked Ramirez to leave the apartment. Sometime thereafter, Sierra went into the bathroom and closed the door. Ramirez responded by punching a mirror on the outside of the bathroom door and punching an adjacent wall.

Sierra exited the bathroom and became even angrier with Ramirez. Sierra admitted she escalated things to a physical confrontation at that point. She further admitted she "[got] in [Ramirez'] face" and "[shoved] him at one point." Additionally, Sierra admitted her shove was the first physical contact between the two. She did so because she was "just being heated, being inappropriate. I put my hands on him, I shouldn't have." Sierra stated that in response to her shoves, "there [were] plenty of times where [Ramirez] backed up or walked away or whatever. But I definitely, you know, was angry and continued it."

While repeatedly shoving Ramirez, Sierra continued to follow Ramirez around the apartment, preventing him from leaving. Sierra then escalated the argument by repeatedly slapping Ramirez. After Sierra repeatedly shoved and slapped Ramirez, he punched her in the face one time with a closed fist. Sierra admitted Ramirez did not hit her until after she hit him "because [she] was so physical with the shoving and slapping and stuff." The argument quickly de-escalated, and Ramirez left the apartment as soon as Sierra gave him an opportunity to do so. Sierra called the police but indicated she did so in order to have a third party mediate things and separate her and Ramirez for the night. Ramirez called someone to pick him up and did not return to the apartment.

2

Lawrence Police Officer David McShane responded to Sierra's call. McShane approached Ramirez, who was outside the apartment, to address Ramirez' injuries and what had occurred with Sierra. McShane noted Ramirez had scratches on his face and an injury to his hand. According to McShane, Ramirez told him that Sierra "kept 'going at him' and he eventually hit her," and he "only struck Sierra after she struck him first and then he left the apartment to separate himself." Ramirez' discussions with McShane and other officers were recorded on McShane's Axon body camera. Ramirez told the officers: "She was hitting me at first. I don't want to press charges. She kept attacking me, so I came at her back."

McShane and another officer, Mark Hammond, spoke with Sierra about the incident. The officers noted the condition of the apartment and observed places with Ramirez' blood due to the injury to his hand from punching the mirror. The officers noted some minor scratches on Sierra's arm and some swelling around her lower lip and left eye. Hammond and McShane decided Ramirez was the predominant aggressor and arrested him. The State charged Ramirez with one count of domestic battery and one count of criminal damage to property. In response, Ramirez moved for an immunity hearing under K.S.A. 2022 Supp. 21-5222 and K.S.A. 2022 Supp. 21-5231, asserting his use of force was "a legally justified and understandable response to [Sierra's] violent aggression."

At the immunity hearing, the district court heard testimony from McShane, Hammond, and Sierra and admitted McShane's body camera footage. The State argued Ramirez' use of force was not statutorily justified. Specifically, the State asserted Ramirez' use of force was disproportionate to Sierra's initial attack, making his use of force unreasonable. The district court rejected the State's argument, finding the State had not met its burden to show probable cause Ramirez' use of force was unlawful. The district court explicitly credited Sierra's testimony, noting Sierra was the first to use

3

physical force, was probably the more physically aggressive, did not allow Ramirez to leave, followed him around, got in his face, shoved him several times, and slapped him.

The district court found a reasonable person in Ramirez' position would find it necessary to use physical force to stop someone from shoving and slapping. The district court found Ramirez had no obligation to allow Sierra to continue attacking him and Ramirez' use of force was reasonable under the circumstances. The district court granted Ramirez' motion for immunity from prosecution and involuntarily dismissed the State's domestic battery charge. The State dismissed the remaining charge without prejudice and timely filed a notice of appeal challenging the district court's grant of immunity. Additional facts are set forth as necessary.

ANALYSIS

*Standards of Review*

When reviewing a challenge to a self-defense immunity ruling, we use a bifurcated standard of review. The district court's factual findings are reviewed for substantial competent evidence, and the district court's legal conclusions are reviewed de novo. *State v. Phillips*, 312 Kan. 643, 656, 479 P.3d 176 (2021).

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). "When making [a] determination [as to whether the district court's findings are supported by substantial competent evidence], an appellate court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). An appellate court "must not substitute its own judgment of the facts and assessment of witness credibility for that of the district court, even when it reasonably

4

finds witness testimony 'unpersuasive.' See *Khalil-Alsalaami v. State*, 313 Kan. 472, 476, 486 P.3d 1216 (2021)." *Granados*, 317 Kan. at 55.

To the extent this appeal requires us to engage in statutory interpretation, it presents a question of law subject to unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). We do not construe various statutory provisions in isolation; rather, we must construe statutes in light of the act as a whole. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015). Further, we cannot construe a statute in a manner that leads to an unreasonable or absurd result. *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020).

*Applicable Legal Principles*

A person who uses statutorily justified force in self-defense "is immune from criminal prosecution . . . for the use of such force." K.S.A. 21-5231(a). "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person . . . against such other's imminent use of unlawful force." K.S.A. 21-5222(a). The use of force under K.S.A. 21-5222(a) involves both a subjective and an objective component. The person using force must subjectively believe the use of force was necessary for self-defense, and it must objectively appear to a reasonable person in like

circumstances the force used was necessary. *State v. Collins*, 311 Kan. 418, 427-28, 461 P.3d 828 (2020).

When a defendant asserts immunity under K.S.A. 21-5231(a), a district court must perform its "gatekeeping function" and determine whether the State can show "probable cause that the defendant's use of force was not statutorily justified." *Phillips*, 312 Kan. at 655-56; see K.S.A. 21-5231(c). This analysis requires a two-step process. First, "'the district court must consider the totality of the circumstances'" and weigh the evidence "'without deference to the State'" to make findings of fact and resolve evidentiary conflicts. *Phillips*, 312 Kan. at 656. Second, the district court must make a legal conclusion regarding whether the State satisfied its burden to show probable cause that the defendant's use of force was not statutorily justified. 312 Kan. at 656. If the district court's factual findings would lead an ordinarily prudent person to believe it is probable the defendant's use of force was unlawful, the district court must allow the prosecution to proceed. 312 Kan. at 664, 666.

*Discussion*

The State argues the district court erred in granting Ramirez immunity for three reasons:

- Ramirez did not subjectively have a genuine belief he needed to use force in self-defense;
- Ramirez used more force than reasonably necessary; and
- Ramirez is not entitled to self-defense immunity as the initial aggressor and/or a mutual combatant.

The State's arguments largely raise factual questions which are inappropriate for us to resolve on appeal. Our only concern with the district court's factual findings is

whether they are supported by substantial competent evidence. 312 Kan. at 656. This review does not permit us to substitute our own weighing of the evidence for that of the district court. *Granados*, 317 Kan. at 41, 55.

Further, the State's first and third points were not raised before the district court. At the immunity hearing, the State made a limited argument, asserting the degree of force used by Ramirez was disproportionate to Sierra's attacks. The State made no coherent argument Ramirez lacked a genuine and honest belief the use of force was necessary, nor did it assert he was the initial aggressor and/or a mutual combatant. In relevant part, the State argued, "[Ramirez] could have done many other things, he didn't do those things. He acted out of anger. We heard testimony from Officer Hammond that [Ramirez] said he gave [Sierra] a couple spicy chicken nuggets." The district court expressed confusion about the "spicy chicken nuggets" comment, asking the State, "Am I supposed to know what that means?" The State replied, "I don't know what that means, but we also heard testimony that he punched her in the face. The State would argue he just used too much force in response to . . . [Sierra's] actions."

As a general rule, issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). An appellant must explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). Our Supreme Court has warned that Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply with this rule risked a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014); see *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Here, the State fails to explain where these points were raised and ruled on below or argue any exception permitting us to review them for the first time on appeal. Accordingly, we deem the State's first and third points waived or abandoned for improper briefing. See 307 Kan. at 430.

Moreover, even if the State had argued a recognized exception to the preservation rule, we have no obligation to address the issue. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). In fact, doing so here would be an improper exercise of our discretion because the State is arguing about Ramirez' subjective state of mind and whether he was the initial aggressor, which are factual questions.

> "An appellate court abuses its discretion to take up a newly raised issue if deciding its merits would require the court to make factual findings such as credibility determinations, resolving evidentiary conflicts, and reweighing evidence. These are typically tasks an appellate court may not perform when the factual issues could have been fully litigated before the appeal." *State v. Allen*, 314 Kan. 280, 284, 497 P.3d 566 (2021).

We decline to address the State's first and third points and will limit our analysis to the State's second point.

*Ramirez' Use of Force Was Reasonable Under the Circumstances*

The State argues Ramirez' use of force exceeded what was reasonably necessary. The State's argument is little more than an invitation for us to reweigh the evidence and second-guess the district court's findings. The State takes an unreasonable position in asserting Ramirez punching Sierra once with a closed fist was excessive in response to her repeated shoves and slaps, moving him around the apartment as he backed up to get away from her.

8

A basic review of K.S.A. 21-5222's plain language shows the fallacy of the State's argument. K.S.A. 21-5222(a) provides:  "A person is justified in *the use of force* against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's *imminent use of unlawful force*." (Emphases added.) K.S.A. 21-5222(a) does not specifically define what *level* of force may be used. But K.S.A. 21-5221(a)(1) defines "use of force" as:

> "any or all of the following directed at or upon another person or thing: (A) Words or actions that reasonably convey the threat of force, including threats to cause death or great bodily harm to a person; (B) the presentation or display of the means of force; or (C) *the application of physical force*, including by a weapon or through the actions of another." (Emphasis added.)

K.S.A. 21-5222(b) provides:  "A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent *imminent* death or great bodily harm to such person or a third person." (Emphasis added.) Read together, these provisions reflect nondeadly force may be used to defend oneself from another's *imminent* use of *unlawful* force, and deadly force may be used to defend from the imminent use of deadly force or force capable of causing great bodily harm. Moreover, neither subsection requires the person using force in self-defense to retreat from his or her attacker. K.S.A. 21-5222(c).

The flaw of the State's argument is K.S.A. 21-5222(a) does not allow the use of force as *retaliation* for force already used by an attacker. Rather, the statute permits a person to prevent an imminent attack, fight off an ongoing attack, or ward off further attack where such further attack is imminent. In other words, the salient question is not what Sierra did before Ramirez punched her, it is what she was reasonably likely to do—or continue doing—if he did not defend himself. The State's argument that it was excessive force for Ramirez to punch Sierra in response to her repeated shoves and slaps

9

conflates deterrence with retaliation. This distorts the plain language of the statute into allowing a logical impossibility akin to preemptive retribution.

Here, it is undisputed Sierra knowingly made physical contact with Ramirez in a rude, angry, or insulting manner by shoving and slapping him during a heated, ongoing argument. Sierra's use of force would constitute battery under K.S.A. 21-5413(a)(2); thus, the force she used was unlawful. Sierra continued pursuing Ramirez around the apartment while repeatedly shoving and slapping him. Moreover, Sierra's testimony reflected that she escalated the level of force from shoving Ramirez at first then to slapping him. Therefore, an objectively reasonable person in Ramirez' position would reasonably believe Sierra would continue with her attacks, i.e., there was an imminent threat of unlawful force from Sierra. And it would not be unreasonable to believe Sierra's use of force might escalate beyond open-handed slaps, given her earlier escalation of force during the attack. Ramirez responded by striking Sierra once with a closed fist in the face, after which the argument de-escalated and Ramirez left Sierra's apartment. This was not an unreasonable use of force under the totality of the circumstances.

The State unpersuasively asserts Ramirez was strong enough to restrain Sierra after he punched her, so he should have restrained her instead of punching her. But there is an evidentiary conflict on this point because Sierra expressly denied wrestling with Ramirez or Ramirez restraining her in any way. Moreover, even if this factual contention were true, the State's hindsight analysis ignores the possibility Ramirez may have only been able to restrain Sierra because the punch stunned or partially incapacitated her.

Here, Ramirez reasonably defended himself in a single instance of nondeadly force in response to repeated and ongoing attacks constituting unlawful force by Sierra. Just because a drawn-out, retrospective analysis as posited by the State might lead reasonable people to believe Ramirez could have used some alternative or lesser amount of force does not mean Ramirez' use of force was objectively unreasonable at the time.

10

The district court's factual findings are properly supported by substantial competent evidence and adequately support its ultimate legal conclusion. See *Phillips*, 312 Kan. at 656. Under these facts, the district court correctly determined Ramirez' use of force was reasonable, and the State failed to show probable cause Ramirez' use of force was unlawful.

Affirmed.