NOT DESIGNATED FOR PUBLICATION

No. 126,398

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ETHAN MAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Norton District Court; PRESTON A. PRATT, judge. Submitted without oral argument. Opinion filed June 14, 2024. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Ethan May entered into a diversion agreement with the State after being charged with criminal damage to property. The diversion agreement contained evidentiary stipulations and provided for a bench trial on those stipulations in the event May violated the agreement. After May violated his diversion agreement, he was convicted of criminal damage to property following a bench trial on the stipulated facts. He was sentenced to eight months in prison. On appeal, May (1) challenges the sufficiency of the evidence supporting his conviction; (2) asserts a violation of his right to a jury trial; and (3) argues the district court erred in sentencing. After considering the entire record and the parties' arguments, we affirm May's conviction and sentence.

1

In March 2022, the State charged May with one count of criminal damage to property, alleging that he "did, feloniously and knowingly, by means other than fire or explosive, damage, deface, or substantially impair the use of property" owned by another without consent in October 2021. The charging affidavit alleged that May and another person had lived in a rental home without the owner's permission for about 10 months and that "all the doors, windows, blinds and flooring need to be replaced," which would cost about $10,000.

In November 2022, May entered into a diversion agreement with the State. In that agreement, the State agreed to dismiss the complaint against May if he completed an 18-month diversionary program. The agreement also stated that May "understands that he has a right to trial by jury" but that "he is giving up those rights by entering into this diversion agreement." Additionally, May agreed that if he violated his diversion and the criminal proceedings on the complaint were resumed, he "understands and agrees . . . that the criminal proceeding shall be conducted on the record of the complaint, charging affidavit, and any stipulation made by the defendant." These stipulations provided that May "stipulates he committed the offense(s)" of criminal damage to property, and he "further stipulates to all elements of each offense as described in the charging affidavit."

Along with the diversion agreement, May entered another stipulation in which he acknowledged:

> "I, Ethan May, understand and agree that if I violate the terms and conditions of this agreement, this case will proceed to trial based solely upon the charge and facts stipulated to and as shown in the complaint, including all evidence set forth in the above agreement, if any, including the charging affidavit and police report, and I will not be

entitled to present additional evidence concerning guilty or innocence at the trial. Therefore, in return for the acceptance into the diversion program, I stipulate and agree to the facts as stated as charged and the facts stipulated to and alleged to in the complaint filed in this case, the supporting affidavit, and the facts as contained in the additional evidence attached to this agreement, if any, and agree to comply to the conditions as set forth herein."

About two months later, in January 2023, the State moved to revoke May's diversion because he had violated the terms of his diversion by, among other things, using methamphetamine and marijuana and failing to report to his court services officer. May admitted the violations, and the district court revoked his diversion and proceeded immediately to a bench trial based on the stipulated facts in the diversion agreement. The court then found May guilty of criminal damage to property "based upon the information and the stipulations contained within the complaint and affidavit."

At sentencing, the district court imposed an upward dispositional departure because it believed May was not amenable to supervision based on his behavior during the diversion agreement, which included an arrest for recklessly driving a stolen vehicle, and the court sentenced May to eight months' imprisonment.

May appeals.

DISCUSSION

May first challenges the sufficiency of the evidence supporting his conviction for criminal damage to property. Challenges to the sufficiency of the evidence in criminal cases are reviewed in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). When a criminal trial proceeds on stipulated facts, appellate courts conduct a de novo review for sufficiency of the

3

evidence, again viewing the facts in a light most favorable to the State. *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502, *cert. denied* 143 S. Ct. 403 (2022). A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

To convict May of criminal damage to property, the State had to prove that May knowingly damaged, destroyed, defaced, or substantially impaired the use of someone else's property without consent by means other than by fire or explosive. K.S.A. 21-5813(a)(1).

May argues that the stipulations he made when entering the diversion agreement did not sufficiently support the element that he damaged the property by means "other than by fire or explosive." And while the State concedes that the complaint and charging affidavit do not specify the way in which May damaged property, it maintains that the stipulated facts in the complaint and charging affidavit are sufficient to provide circumstantial evidence to show that May damaged the property by means other than fire or explosive.

We agree with the State. When May entered the diversion agreement, he stipulated to "the facts shown in the complaint," which include the stipulation that he damaged the property by means "other than fire or explosive." Thus, his stipulation, at a minimum, implicitly supports the district court's conclusion that May was guilty of the offense.

The argument in this case is similar to the one made in *State v. Kemp*, No. 119,069, 2019 WL 985427 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1067 (2019). There, the defendant appealed her conviction for criminal damage to property, alleging that the stipulated facts were insufficient to prove that another person had an interest in the damaged property. But a panel of this court found the stipulated

4

facts—that the defendant was married to the victim and the two lived in the same apartment—"constitute circumstantial evidence from which a fact-finder could reasonably infer the type of interest that existed." 2019 WL 985427, at *6.

Moreover, in *State v. West*, No. 121,803, 2020 WL 6371381 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1046 (2021), the defendant made a similar argument, challenging the sufficiency of the evidence of his convictions of criminal threat and domestic battery at a bench trial on stipulated facts. There, the defendant argued that there was insufficient evidence to convict him of criminal threat because the stipulations did not establish the required intent. And he argued there was insufficient evidence to convict him of domestic battery because the stipulations did not establish that the victim was a member of the household. But a panel of this court disagreed with both arguments. Instead, the court found that these stipulations provided sufficient evidence to support the convictions. As for the criminal threat conviction, the defendant stipulated to having the intent to place the defendant in fear; as for the domestic battery conviction, the defendant stipulated that the victim was a member of the household as stated in the complaint. 2020 WL 6371381, at *3-4.

May makes the same argument as the defendants in *Kemp* and *West*, and, likewise, we come to the same conclusion as in those cases. May assumes that the State's evidence must specify exactly what type of means "other than by fire or explosive" that he used to commit the criminal damage to property. But both *Kemp* and *West* show that stipulated facts—although not explicitly establishing the disputed evidence—constituted sufficient circumstantial evidence from which a fact-finder could make reasonable inferences in finding the defendant guilty of the charged offense. Similarly, we find the stipulated facts here sufficient to support May's conviction of criminal damage to property.

May goes on to assert that because a defendant cannot stipulate to a legal conclusion, this means he could not stipulate to committing this crime—since that would

itself be a legal conclusion. May is correct that a party cannot stipulate to an ultimate legal conclusion. See *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021). But his extrapolation of this general rule misses the mark. Not only did May stipulate that "he committed the offense(s) of [criminal damage to property]," he also stipulated to the underlying facts alleged in the complaint and charging affidavit. That is, he stipulated that he lived in a rental home for about 10 months without the consent of the owner and that he damaged, destroyed, defaced, or substantially impaired the interior of the property, which required that all the doors, windows, blinds, and flooring be replaced. Thus, contrary to May's assertion, he did not simply stipulate that he is guilty of a crime, which would be a legal conclusion. He also stipulated to the underlying facts that made up the elements of this offense. We agree with the district court and find the evidentiary stipulations sufficient to find May guilty of criminal damage to property.

*May's stipulations did not constitute a guilty plea.*

May next argues that his stipulation was essentially a guilty plea, thus requiring the full protection given guilty pleas under K.S.A. 22-3210. Under that statute, a district court may only accept a felony guilty plea if the defendant enters the plea in open court; the court informs the defendant of the specific sentence guidelines of the crime and the maximum penalty provided by law; the court determines that the defendant made the plea knowingly and voluntarily; and the court is satisfied there is a factual basis for the plea. K.S.A. 22-3210(a). Thus, May argues, because the district court did not follow the safeguards laid out by K.S.A. 22-3210, the court erred by accepting his diversion agreement.

But May himself notes that our Supreme Court rejected this argument nearly 50 years ago when it found that K.S.A. 22-3210 did not apply to a party's stipulations. *White v. State*, 222 Kan. 709, 712-13, 568 P.3d 112 (1977). Nevertheless, May argues *White* was wrongly decided and should be overruled for two reasons: (1) *White* "failed to realize

that a stipulation to the crime itself is not a stipulation to the evidence but an admission of guilt," which should require the full protection of K.S.A. 22-3210; and (2) although a defendant retains various rights after a stipulation—like the right to appeal—*White* failed to appreciate that there is often nothing left to appeal because there were no legal arguments made at the district court.

Even if we were persuaded by May's argument, we are duty-bound to follow Kansas Supreme Court precedent unless there is some indication that it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). May cites no authority to show that the court is making this move. Thus, we find May's stipulations are not entitled to the full protections that a guilty plea receives under K.S.A. 22-3210.

In a similar vein, May argues that the district court failed to obtain a constitutionally adequate jury trial waiver when he entered the diversion agreement and made the underlying stipulations. But, generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). May concedes that he did not preserve this argument for appeal, but he argues we should still rule on it because it involves a question of law arising out of admitted facts and consideration of this issue is necessary to prevent the denial of his fundamental right to a jury trial. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

We acknowledge that the right to a jury trial is a fundamental right and that appellate courts often choose to review these issues for the first time on appeal. *State v. Redick*, 307 Kan. 797, 802, 414 P.3d 1207 (2018). But there is no requirement that an appellate court do so; a decision to review an unpreserved claim under an exception is ultimately a prudential one. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

Whether a defendant waived the right to a jury trial is a question of fact that depends upon the particular context and circumstances in each case. *State v. Lewis*, 301 Kan. 349, 376, 344 P.3d 928 (2015). "Full consideration of the facts and circumstances surrounding a defendant's waiver . . . is necessary in deciding whether a knowing and voluntary waiver occurred in any given case." Put another way, appellate courts must carefully scrutinize the facts and circumstances, "which give important context to the process," to determine whether a knowing and voluntary waiver occurred. *State v. Beaman*, 295 Kan. 853, 861, 286 P.3d 876 (2012).

After careful review of the record, we find that it lacks the necessary factual development to allow a meaningful review of this question for the first time on appeal. The crux of this fact-heavy inquiry focuses on whether the defendant made a knowing and voluntary waiver of his right to a jury trial. There is evidence that the district court had informed May of his right to a jury trial at his first appearance, and the diversion agreement explicitly stated that May understood that he had a right to a jury trial and that he was waiving those rights by entering into the diversion agreement. May does not dispute or even acknowledge all of these facts on appeal. Instead, he simply argues that "at no point in the record does it show that the district court advised May of his right to a jury trial before waiving it."

Again, our inquiry is ultimately focused on whether May made a knowing and voluntary jury trial waiver. But because May did not make the argument that he now makes before us at the district court, the court was unable to make any factual findings related to whether May made a knowing or voluntary waiver. May makes no argument here that suggests that he was confused about this right or that he was coerced into entering into this diversion agreement. Thus, based on the undeveloped factual record before us, we find that it would not be prudent to consider May's argument for the first time on appeal.

8

*The upward dispositional departure was not an* Apprendi *violation.*

In his final claim on appeal, May argues that the district court violated his right to a jury trial when it granted an upward dispositional departure from probation to a prison term, relying on the United States Supreme Court case of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 4348, 147 L. Ed. 2d 435 (2000).

May concedes that our Supreme Court has held that *Apprendi* does not apply to dispositional departures. *State v. Carr*, 274 Kan. 442, 452, 53 P.3d 843 (2002) ("The distinction between probation and the imposition of a prison sentence renders the United States Supreme Courts' *Apprendi* decision inapplicable to a sentencing judge's decision to impose a dispositional departure prison sentence rather than to grant probation."). Nevertheless, May maintains that "it's time to rethink *Carr's* reasoning."

But, as we previously noted, we are duty-bound to follow Kansas Supreme Court precedent unless there is some indication that it is departing from its previous position. *Rodriguez*, 305 Kan. at 1144. May does not provide any indication that the court plans to depart from its holding in *Carr*. Thus, we find the district court did not err in imposing an upward dispositional departure.

Affirmed.