NOT DESIGNATED FOR PUBLICATION

No. 128,573

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GLEN A. CRENSHAW JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed June 26, 2026. Affirmed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER, J., and LAURA JOHNSON-MCNISH, District Judge, assigned.

PER CURIAM: Crenshaw appeals the district court's revocation of his probation, the imposition of his original prison sentence, and the denial of his jail credit. After a thorough review, we find that the district court did not abuse its discretion in revoking Crenshaw's probation and imposing his original sentence. However, we agree that Crenshaw is entitled to 91 additional days of jail credit toward his sentence based on clear Kansas Supreme Court precedent.

1

As a result of his April 2005 conviction for aggravated indecent liberties with a child, Crenshaw is subject to lifetime registration under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. Over seventeen years after his conviction and registration order, the State charged Crenshaw with two felonies under KORA, alleging violations for failing to report as required in September and October of 2022. K.S.A. 22-4903(a), (c)(1)(B); K.S.A. 22-4905(b)(1).

In March 2024, Crenshaw pleaded guilty to both counts. In exchange for his pleas, the State agreed to recommend the low range for sentencing and recommend a dispositional departure from a combined presumptive prison of 120 months to a 36-month term of probation. The plea listed several substantial and compelling factors: (1) Crenshaw had successfully registered since his release in 2008 without issue; (2) Crenshaw's last person felony conviction was in 2018; (3) Crenshaw acknowledged ongoing mental health issues and expressed a desire to address them through community services; (4) Crenshaw was still obtaining a neuropsychological evaluation; and (5) community-based services were readily available to address Crenshaw's mental health needs and promote rehabilitation.

Before sentencing, as agreed, Crenshaw filed a dispositional departure motion requesting probation. In addition to the factors listed in the plea, the motion showed that, across several evaluations over the years, Crenshaw consistently demonstrated cognitive and functional impairments: low IQ; noted fair-to-poor memory, concentration, comprehension, insight, and judgment; poverty of speech; and indications of thought disorder. A neuropsychological evaluation concluded that he required significant daily assistance with tasks such as remembering appointments, taking medication, and paying bills on time. Defense attached a copy of the neuropsychological evaluation which

detailed Crenshaw's conditions and specified that Crenshaw has schizoaffective disorder and suffered a stroke six to seven years ago.

At sentencing, the defense discussed the dispositional departure motion and noted, "[w]e understand the seriousness of a departure to probation. If granted, it's going to be a one-shot deal." Defense counsel argued that Crenshaw was a strong candidate for probation, citing his support system—particularly his mother and family—who could help him comply with all obligations. Counsel noted that Crenshaw appeared to understand the process. Counsel stated that Crenshaw had done well on probation in the past and requested a departure to allow him to reintegrate into the community.

The district court judge addressed Crenshaw directly, asking how probation would differ given his long criminal history. Crenshaw described plans to work and return to college, emphasizing a change in his life approach. The court confirmed the intent to grant probation under the plea agreement, reminded Crenshaw of his family support, and asked whether Crenshaw would be staying with his family. Crenshaw stated he would live alone. The judge highlighted potential memory issues and stressed that Crenshaw needed active management to comply with all probation conditions, including ongoing registration obligations. Finally, the judge made clear that this probation represented an opportunity, and any violations would result in prison time. Crenshaw acknowledged and confirmed his understanding.

Consistent with the plea agreement, the court imposed a presumptive 120-month sentence on the first count and 32 months on the second, to run concurrent with each other and consecutive to any other sentence. The court granted a dispositional departure, placing Crenshaw on 36 months of probation, based on his prior compliance with registration, acknowledgment of mental health issues, and the parties' agreement. The court informed Crenshaw of his probation conditions:  required him to complete drug,

3

alcohol, and mental health evaluations, follow all recommendations, and sign releases so his intensive supervision officer (ISO) could receive the mental health evaluation.

Just over a month later, in June 2024, the district court issued a warrant which alleged that Crenshaw had violated the conditions of his probation. Crenshaw's ISO alleged that he had failed to report as required twice in May, failed to complete a drug and alcohol evaluation, and failed to complete a mental health evaluation. About two months later, Crenshaw was arrested on that warrant.

At the probation violation hearing, Crenshaw waived his right to an evidentiary hearing and admitted to the alleged violations. The district court found that Crenshaw violated his probation as outlined in the warrant. For disposition, the State noted a letter from Community Corrections requesting a two-day sanction and reinstating probation. At the same time, the State expressed concern that Crenshaw would be set up for failure if a mental health treatment plan was not established before his release from jail and requested that the court address whether some type of residential placement was available.

The district court judge allowed Crenshaw's mother to address the court, stated that he wanted Crenshaw to succeed, but emphasized that Crenshaw needed to resolve his mental health issues and complete a drug and alcohol evaluation. The court also asked Crenshaw's mother about his living arrangements and how she could support him.

Crenshaw's mother spoke about his long history of mental illness, noting his incarceration in state hospitals, his substance use, and struggles with both homelessness and obtaining mental health services. Crenshaw's mother also noted her struggles with managing Crenshaw's medications. His mother stated:

4

"He is not well. He can't function on his own. He can't live on his own, because he can't pay his medication. He doesn't make his own appointments. I have to make them. I make sure he saw his . . . cardiologist . . . when he got out in November 2019. So he has been under his care. But there were different times that he wouldn't make his appointment. He is not mentally well to live alone."

Crenshaw's mother also contended that the court erred by leaving the responsibility for obtaining a mental health evaluation solely to Crenshaw. She argued that Crenshaw had completed evaluations on two prior occasions, but the court never included the findings, and although defense counsel had stated a new evaluation would be done, it never occurred. According to his mother, placing Crenshaw on probation without ensuring the evaluation was completed left him to handle it alone, which he could not manage. His mother noted that she also cared for her other disabled adult child, emphasizing that Crenshaw could not manage his obligations without proper support. Finally, she stated the district court "can send him up, but you're wrong."

Defense counsel told the district court that since sentencing, Crenshaw had found a hotel and "held up." Counsel agreed that Crenshaw needed to be set up with mental health services and housing assistance. Counsel explained that she could contact some resources and requested that the district court impose a sanction and reinstate Crenshaw's probation. Crenshaw addressed the court and explained that he did not register twice, stating "it just slipped my mind for whatever reason. Probably, I'm guessing, because of age and the drug use." He also shared that he was willing to find employment and wanted to go back to college.

The district court expressed that there are resources that help Crenshaw manage his probation, but ultimately it was his responsibility to comply with the conditions of his probation. The court also advised that if Crenshaw was not able to do probation, as suggested by his mother, the alternative is prison. As a result, the court granted a

continuance, allowing time for defense counsel and Crenshaw to find resources and give the court a plan. The court also noted that if there is no plan that Crenshaw would "go to prison."

At the dispositional hearing, defense counsel explained that she made several attempts to find resources for Crenshaw. Although counsel received no response, she noted that Crenshaw had been working with a social worker at the jail to identify housing opportunities. Counsel told the court that there was no resolution yet, but that Crenshaw was working on the problem.

Crenshaw then addressed the court explaining that he planned to contact a former landlord who had a place for him upon his May release. He admitted that he "never did get around to it" previously but stated that he could follow through this time. He also stated that he was not "an invalid" like his mother suggested. He expressed a willingness to obtain the mental health and substance abuse evaluations ordered as a condition of his probation. Crenshaw also told the court that he had just been approved for a Medicaid program.

The district court explained that Crenshaw's mother stated he could not comply with probation requirements without assistance, but Crenshaw insisted he did not need help, despite a record showing he had not met those requirements. The court noted that Crenshaw received a departure and he is "not new to the system." The court explained Crenshaw failed to follow through on required tasks while on probation—such as not contacting a potential housing resource—and noted that, whether due to inability or refusal, the necessary steps were not being completed. The district court found that Crenshaw was not amenable to probation and revoked probation, imposing his original sentence. The court noted it had given Crenshaw an opportunity to comply, but there was still no plan in place that would allow him to succeed on probation.

Defense counsel asked the district court to modify the sentence and emphasized that Crenshaw faced 120 months. He noted that the violations alleged did not include the commission of any new crimes. The district court judge noted he had already considered that when he gave Crenshaw a departure sentence. The court denied the request.

The district court did not discuss jail credit during sentencing or either of the probation revocation proceedings.

The journal entry filed after the revocation of Crenshaw's probation showed that Crenshaw spent 610 days in jail pending disposition of this case. The journal entry indicated that Crenshaw was not awarded 91 of those days of jail credit toward this case, because he was also serving those days on a City of Wichita case.

Crenshaw timely appeals.

ANALYSIS

*The district court did not abuse its discretion when it revoked Crenshaw's probation and imposed his underlying 120-month prison sentence.*

Crenshaw argues that the district court abused its discretion when it revoked his probation and imposed his original sentence of 120 months in prison and not any lesser sentence.

Before we consider Crenshaw's argument, we must review the legal rules applicable to probation revocation. A district court's decision to revoke probation must be based on a factual finding that a condition of probation has been violated. Crenshaw stipulated that he violated his probation.

7

Once a probation violation is established in the case of a nondrug felony, a district court has discretion to revoke probation and impose the original sentence or any lesser sentence unless the court is otherwise limited by statute. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022); see K.S.A. 22-3716 (b)(3)(B)(iii). Crenshaw agrees that because he was placed on probation as part of a dispositional departure, no intermediate sanctions were required. See K.S.A. 22-3716(c)(7)(B).

Judicial discretion is abused when its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Crenshaw bears the burden of showing an abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Because Crenshaw does not allege a legal or factual error, we may find an abuse of discretion only when no reasonable person would agree with the decision made by the district court. *State v. Jones*, 306 Kan. 948, Syl. ¶ 7, 398 P.3d 856 (2017). In determining reasonableness, an appellate court does not substitute its judgment for that of the district court. See *Thompson v. Thompson*, 205 Kan. 630, 632, 470 P.2d 787 (1970) (applying an abuse of discretion standard of review, an appellate court does not substitute its judgment for the trial court's when the judgment is reasonable). The fact that we may not have come to the same conclusion as the district court is irrelevant.

Crenshaw argues that his decade-long prison sentence for failing to comply with KORA is unreasonable and unjustified. Crenshaw argues that KORA is classified as a civil, non-punitive regulatory scheme and any penalties for noncompliance are only legitimate insofar as they ensure timely registration—not to punish. Crenshaw also argues that a ten-year prison sentence for missing filing deadlines is unreasonable to effectuate compliance with a filing deadline. Crenshaw contends that KORA imposes extreme

criminal penalties for conduct that is administrative in nature. Which according to Crenshaw the only reason these harsh penalties are tolerated is because they are imposed on a disfavored group, rather than because they are necessary or reasonable to achieve compliance.

The State argues that the district court acted reasonably and gave Crenshaw meaningful opportunities to avoid incarceration. At sentencing, the court acknowledged his mental health issues and granted a dispositional departure to probation, emphasizing the importance of compliance. Crenshaw stated he understood these conditions. But he failed to follow through—he did not report to his ISO or complete required evaluations. Thus, according to the State, the district court fulfilled its obligations, and the resulting consequences stem from Crenshaw's failure to comply with the terms he agreed to.

Crenshaw was required to report to his ISO—the same obligation underlying his original KORA violation. Although he faced a presumptive prison sentence, the district court granted probation, giving him an opportunity to avoid incarceration by complying with conditions that included obtaining mental health and drug and alcohol evaluations and following all recommendations. Yet within weeks Crenshaw failed to report to his ISO for two consecutive weeks, and when given the chance to explain, he stated that it "slipped [his] mind for whatever reason." Even his mother, while criticizing the system and noting a lack of support, acknowledged that Crenshaw could not comply with probation without assistance.

Crenshaw also admitted he had an opportunity to secure housing when probation began but failed to follow up. The district court repeatedly warned him that further violations would likely result in prison. The court even continued the hearing to give Crenshaw a chance to develop a plan addressing concerns about his ability to comply. He failed to present a proper plan, leaving the court with little reason to conclude he would

avoid future violations. Although all parties wanted Crenshaw to succeed, compliance ultimately depended on him.

It was not unreasonable for the district court to find that continuing Crenshaw's probation would not produce a different result. Under these circumstances, this court cannot conclude that no reasonable person would have agreed with the district court's decision to revoke Crenshaw's probation.

As to the argument that the district court should have imposed a lesser sentence after revoking his probation, Crenshaw argues that given his low IQ score, prior stroke, and schizoaffective disorder diagnosis, punishing him for an isolated incident of forgetfulness was not only unfair but punishing him with 10 years in prison is unconscionable.

That said, at sentencing, the district court made clear that it was imposing the standard 120-month sentence rather than the lower range recommended by the parties, while also giving Crenshaw the opportunity for probation. Crenshaw faced two violations, and the court ordered those sentences to run concurrent. Therefore, regardless of whether this court would have done the same, it was not unreasonable for the district court to impose his original underlying prison term.

Finally, Crenshaw's assertion that the punishment does not fit the crime here is a policy argument appropriately addressed by the Legislature, not this court. The district court therefore did not abuse its discretion in revoking Crenshaw's probation and ordering him to serve his underlying sentence.

*The district court erred in not awarding Crenshaw jail credit.*

> *We elect to consider this matter even though Crenshaw raises it for the first time on appeal.*

Because Crenshaw raises his claim for the first time on appeal, this court must determine whether to exercise its prudential authority to consider this unpreserved claim. This court may review an unpreserved claim under any of the following limited exceptions:  (1) the new claim raises only a question of law based on uncontested facts; (2) consideration is necessary to serve the ends of justice or prevent denial of fundamental rights; or (3) the district court's judgment is correct for the wrong reason. See *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). Yet even if an exception applies, this court retains discretion and may decline review. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). Kansas "caselaw is clear that an appellate court has discretion to decide when to walk this path." *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017) (An appellate court has discretion to review an issue raised for the first time on appeal.).

Kansas courts have recognized that defendants often cannot raise jail credit issues at sentencing when, as here, the trial court fails to address the matter. In *State v. Brown*, 65 Kan. App. 2d 663, 670, 570 P.3d 1278, *rev. denied* 321 Kan. 791 (2025), the defendant did not object to the district court's calculation of jail time credit below, but the court noted that "she had no chance to do so since the court did not address jail time credit in court during her probation revocation hearing. Instead, the court did so in the journal entries." See also *State v. Watie*, 66 Kan. App. 2d 166, 168, 577 P.3d 674 (2025) (Review was supported because the trial court did not announce the defendant's jail credit at sentencing.). This is exactly what happened here. The first notice Crenshaw received regarding the amount of jail credit awarded was the filing of the journal entry of

11

sentencing. Accordingly, we elect to consider Crenshaw's claim as one that raises a question of law on uncontested facts.

*Crenshaw is entitled to 91 days of jail credit.*

The journal entry filed after the revocation of Crenshaw's probation showed that Crenshaw spent 610 days in jail pending disposition of this case. The journal entry indicated that Crenshaw was not awarded 91 of those days toward this case, because he was also serving those days on a City of Wichita case. Crenshaw argues that he is entitled to those 91 days of jail credit.

Although the caselaw in this area, accompanied by a variety of legislative changes, has been changing rapidly over the last couple of months and years, we are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). And under the facts of this case, the caselaw is clear.

Because Crenshaw committed his crimes in September and October of 2022, K.S.A. 2022 Supp. 21-6615 applies here. See *State v. Mitchell*, 66 Kan. App. 2d 196, 197, 579 P.3d 970 (2025), *rev. granted* 321 Kan. 793 (2026). Based on the plain language of K.S.A. 2022 Supp. 21-6615, as interpreted by our Supreme Court in *State v. Hopkins*, 317 Kan. 652, 657, 659, 537 P.3d 845 (2023), the district court was required to award an allowance of one day of jail time credit for each day of incarceration pending disposition of his case, even if that would result in duplicative credit. Lest there be any doubt, the Supreme Court reiterated this rule in *State v. Zongker*, 322 Kan. 137, 143, 586 P.3d 769 (2026) (holding that Zongker was entitled to jail credit for all days spent incarcerated pending disposition of his case, including any days for which he also received credit in the prior case).

12

Crenshaw is entitled to receive 91 days of jail credit against his sentence in this case.

Affirmed in part, vacated in part, and remanded with directions.