IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,181

STATE OF KANSAS,
*Appellee*,

v.

MARK HOLLEY III,
*Appellant.*

SYLLABUS BY THE COURT

1.

Felony murder imposes strict liability for homicides caused by the attempt to commit, commission of, or flight from an inherently dangerous felony. Thus, self-defense is never a defense to felony-murder. A self-defense instruction may only be given in felony murder cases to the extent it may negate an element of the underlying inherently dangerous felony.

2.

Self-defense is a legal justification for the use of force in defense of oneself or another. Given this, a self-defense instruction is not legally appropriate when the defendant is charged with a crime which does not include an element that can be legally justified by the use of force in defense of oneself or another.

3.

The crime of aggravated robbery described in K.S.A. 2020 Supp. 21-5420 does not include any element that could be justified by using force in defense of oneself or another, and therefore cannot be negated by a claim of self-defense. The "force" element

1

described by K.S.A. 2020 Supp. 21-5420 is a predicate and means to the second element of "knowingly taking property from the person or presence of another." The use of force for the purpose of "taking property from the person or presence of another" can never be legally justified by the defense of self or another.

4.

A defendant may not assert self-defense if the defendant is already attempting to commit, committing, or escaping from the commission of a forcible felony.

5.

Proof of a probability or likelihood of harm is not required to prove child endangerment under K.S.A. 2020 Supp. 21-5601(a).

6.

In child endangerment cases, juries should consider: (1) the gravity of the threatened harm, (2) the Legislature's or regulatory body's independent assessment that the conduct is inherently perilous, and (3) the likelihood that harm to the child will result or that the child will be placed in imminent peril.

7.

A criminal defendant who receives a restitution order during sentencing will not be faced with a civil judgment for restitution unless it is separately obtained through a civil cause of action.

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed May 20, 2022. Convictions and restitution order affirmed and sentence vacated in part.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Boyd K. Isherwood*, assistant district attorney, *Marc Bennett,* district attorney, and *Derek Schmidt,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  Mark Holley III was convicted of first-degree felony murder, two counts of aggravated robbery, two counts of child endangerment, theft, and possession of marijuana in connection with four separate events within a month of each other in 2017. Holley challenged his first-degree felony murder and child endangerment convictions on direct appeal, as well as the district court's order of lifetime postrelease supervision and Holley's restitution order. In April 2021 we reversed Holley's first-degree murder conviction, affirmed his child endangerment conviction, and vacated his sentence. Upon a motion for rehearing by the State, we asked the parties to brief several issues related to the use of self-defense. Today we hold that a self-defense instruction may only be given in felony-murder cases to the extent it may negate an element of the underlying inherently dangerous felony. Because Holley's alleged self-defense in this case cannot legally justify any of the elements of the underlying inherently dangerous felony of aggravated robbery, Holley was not entitled to a self-defense instruction. We therefore find no error and affirm Holley's felony-murder conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Although Holley's convictions stem from four separate events, for today's purposes we need only discuss the facts surrounding the robbery of Timothy Albin and the murder of D'Shaun Smith. Albin contacted Holley on Facebook asking about a cell phone Holley posted for sale. Holley agreed to sell the cell phone to Albin for $80, and the two arranged to meet at Holley's house. When Albin arrived, Holley was sitting on

3

the porch. Holley then got up, walked toward Albin's car, and sat in the front passenger seat. Albin's children—then ages one and two—sat in car seats behind Holley and Albin.

Holley gave Albin the cell phone, but Albin soon gave the phone back to Holley complaining that it was not the right model and had not been charged. As Albin tried to hand the phone back, Holley pulled out a firearm, told Albin he "knew what was going on," and demanded Albin's wallet, phone, and money. Albin requested he be able to keep his driver's license, but the man told Albin he had "five seconds to get out of here before I gas your shit." Albin handed over his belongings and drove off quickly to call the police at a nearby gas station.

About a month later, Holley shot and killed D'Shaun Smith. That day, Holley contacted Smith through Facebook Messenger to buy marijuana. Holley and Smith agreed to meet up, and Holley told Smith to not bring guns because the two were meeting at Holley's mother's daycare facility.

Emari Reed, Smith's girlfriend, drove Smith to meet Holley. As Reed and Smith pulled up to Holley's mother's daycare, Holley got into the back-passenger seat behind Smith. Smith gave Holley the marijuana, but Holley gave it back to Smith and said he was waiting on his girlfriend to come out from the duplex. A couple of minutes later, Reed claims Holley said, "This is a robbery."

At trial, Reed testified that Holley fired a shot at Smith after this statement. Smith fell back onto Reed and she could see blood coming from his chest and mouth. Reed tried to drive away but could not get her car moving. Unsuccessful, she stepped out of the car, screaming, and saw Smith reach for a gun under the passenger seat and stand up out of the car. Reed testified she believed Smith fired a shot back at Holley but admitted she did not see him fire or hear a gunshot. Reed stated her ears were still ringing and her vision

4

was blurry. Smith collapsed back into the car seconds after standing and was unresponsive. By the time Reed managed to call for help, Smith had died.

At trial, Holley's version of events was quite different. He admitted to shooting Smith but claimed it was "[i]n complete self-defense." Holley claimed that while Smith and Reed initially came to Holley's to sell Holley marijuana, Holley informed them he no longer wished to buy marijuana when he got into the car. Instead, Holley offered to pay them $20 for a ride to Holley's girlfriend's house. Smith and Reed agreed to give him a ride. The car never left Holley's house, however, because when Holley pulled out the $200-$300 cash he was carrying then to pay $20 for the ride, Smith tried to grab the wad of cash from Holley's hands. Smith only managed to grab Holley's phone.

As Holley opened the door to get out of the back seat, Holley saw Smith start to reach under his seat. And when Holley closed the car door, Holley saw Smith crack open the passenger car door and point a gun out of the open passenger window. Holley, unable to run due to an old ankle injury, tried to smack the gun out of Smith's hand. Holley claimed that as he hit Smith's hand, the gun fired. Holley then recalled Smith trying to squeeze the trigger again, but nothing happened because the gun appeared to be jammed. When Smith tried to rack the slide back, Holley pulled his gun out of his pocket and fired a shot aiming at Smith's right arm to slow him down so he could run away.

Investigators recovered Smith's Jimenez .380 pistol, two cell phones, a shell casing from a Smith & Wesson .380 Bodyguard semi-automatic pistol, 4 grams of raw marijuana, and a digital scale from the scene around Reed's car. The Jimenez pistol was jammed and a live Hornady .380 auto caliber cartridge was stuck inside the barrel. The cartridge's primer was punched, but the round did not fire. The magazine contained four rounds of Hornady .380 auto ammunition. Investigators also lifted six fingerprints from Reed's vehicle. Two fingerprints found on the exterior rear passenger door matched

5

Holley's left index and middle fingerprints. Later, investigators determined one of the cell phones recovered belonged to Holley.

Using media accounts linked to Holley's cell phone and tracking dogs, investigators tracked Holley to his sister's residence. After surveilling the residence for some time, police arrested Holley as he tried to drive away in a black Lexus. Holley had a stolen Smith & Wesson pistol in his possession when he was arrested.

After interviewing witnesses, investigators learned that Smith may have successfully fired a shot. Investigators searched the scene and found a bullet strike on a home north of where Reed's car was parked. While the bullet strike was visible in the painted brick of the home, there was no debris around the home to suggest it was a fresh hit. Investigators were also unable to locate a shell casing associated with this bullet.

An autopsy revealed Smith's cause of death was a gunshot wound to the trunk. The autopsy also showed this fatal round was fired at "near contact" range. Testing showed the Smith & Wesson pistol recovered during Holley's arrest matched the projectile recovered from Smith's autopsy.

At trial, Holley requested a self-defense instruction. The district court declined to give the instruction, concluding that it was not legally appropriate under K.S.A. 2020 Supp. 21-5226(a) because Holley was charged with a forcible felony.

The jury convicted Holley guilty as charged. The district court sentenced Holley to prison sentences for each of the 7 counts, including a hard 25 life sentence for the felony-murder conviction, and also ordered a postrelease supervision period. The district court also imposed $9,184.75 in restitution.

Holley directly appealed, and in April 2021 we held that the district court erred in refusing to give a self-defense instruction because the instruction was legally and factually appropriate. We held that the error was not harmless and reversed and remanded for a new trial. *State v. Holley*, 313 Kan. 249, 257, 485 P.3d 614 (2021). The State subsequently filed a motion for rehearing, and we granted the State's motion and directed the parties to brief responses to several questions relating to the appropriate use of self-defense instructions.

ANALYSIS

First, Holley argues the district court committed reversible error in refusing a self-defense instruction. We disagree. As announced in *State v. Milo*, 315 Kan. ___ (2022) (No. 120,726, this day decided), slip op. at 9-10, self-defense is never a defense to felony murder. A self-defense instruction may only be given in felony-murder cases to the extent it may negate an element of the underlying inherently dangerous felony. But there is no legal self-defense justification for aggravated robbery.

Second, we affirm Holley's child endangerment convictions. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to support Holley's convictions. We find that a rational fact-finder could have found beyond a reasonable doubt that Holley knowingly placed Albin's children in danger. The State was not required to prove a probability or likelihood of harm. Probability or likelihood of harm is one of multiple factors a jury may consider.

Third, we vacate Holley's lifetime postrelease supervision sentence, because a sentencing court lacks authority to order a term of postrelease supervision in conjunction with an off-grid, indeterminate life sentence.

7

Finally, we decline to vacate the district court's restitution order, as Holley has not preserved this argument for appeal.

*The district court did not err in refusing to give a self-defense instruction.*

The starting point for any alleged jury instruction error is our familiar four-part *Plummer* test:

"[F]or instruction issues, the progression of analysis and corresponding standards of review on appeal are:  (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v.*] *Ward* [, 292 Kan. 541, 565, 256 P.3d 801 (2011) ]." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

At trial, Holley requested a self-defense instruction. The district court determined that the facts supported a self-defense instruction but held the instruction was not legally appropriate because Holley was charged with a forcible felony. Holley asserts that the failure to give the self-defense instruction amounts to reversible error.

The use of self-defense is already limited by statute as both an immunity and an affirmative defense. It is legally unavailable to a person who "[i]s attempting to commit, committing or escaping from the commission of a forcible felony." K.S.A. 2020 Supp. 21-5226(a); K.S.A. 2020 Supp. 21-5231(a). A "'[f]orcible felony' includes any treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery, aggravated sodomy and any other felony which involves the use or threat of

8

physical force or violence against any person." K.S.A. 2020 Supp. 21-5111(n). In *State v. Barlett*, 308 Kan. 78, 84, 418 P.3d 1253 (2018), we held that a defendant may not advance a self-defense theory if that defendant is "already otherwise" engaged in the conduct described in K.S.A. 2020 Supp. 21-5226(a)—that is, already attempting to commit, committing, or escaping from the commission of a forcible felony—when he or she commits a separate act of violence.

The self-defense issues Holley raises are similar to those we addressed today in *State v. Milo*, 315 Kan. ___ (2022) (No. 120,726, this day decided). There, we said:

> "[W]e have allowed (or at least considered) self-defense instructions in certain felony-murder cases when such an instruction was clearly not legally appropriate. This misstep arose out of a misplaced focus on whether the underlying inherently dangerous felony constituted a 'forcible felony.' This often occurred in 'drug deal gone bad' cases. See, e.g., *State v. Jacques*, 270 Kan. 173, 180-81, 14 P.3d 409 (2000) (cocaine possession was a forcible felony when the defendant stabbed the victim after being attacked, noting the 'aura of violence surrounding the possession of illegal drugs'); *State v. Ackward*, 281 Kan. 2, 24-26, 128 P.3d 382 (2006) (deeming possession of marijuana with intent to sell a forcible felony when two of the four people involved with a drug transaction were armed, and stating that '[t]he possession of or desire to possess illegal drugs often brews an atmosphere of violence with participants being susceptible to robbery and physical harm by others wanting their drugs or money').

> "These decisions were analytically flawed, however, because they skipped a necessary step along the analytical path. We have clarified that self-defense in a felony murder case can *only* negate criminal liability for the underlying inherently dangerous felony as an *element* of felony murder (self-defense can never be a legal justification for the killing itself). Given this, a court presented with a self-defense claim in the context of felony murder must first examine the elements of the underlying inherently dangerous felony alleged by the state to determine whether any of those elements can be negated by a claim of self-defense. If the answer is no, then the self-defense instruction will not be legally appropriate.

9

"The key question to ask is whether there is an element of force, inherently necessary to the commission of the underlying crime, which could be justified by the defense of oneself or another. Stated another way, some crimes contain an element—the use of force—which may be negated by a proper claim of self-defense. One example is the inherently dangerous felony of criminal discharge of a firearm. K.S.A. 2020 Supp. 21-5402(c)(1)(O); K.S.A. 2020 Supp. 21-6308(a). The elements of that crime include that the defendant discharged a firearm, and that it was directed either at a dwelling or a vehicle in which there was a human being present. K.S.A. 2020 Supp. 21-6308(a). If the act of shooting that constitutes the criminal discharge was done in an act of self-defense, then self-defense should be available to the defendant. See *State v. Alderson*, 260 Kan. 445, 922 P.2d 435 (1996) (defendant charged with felony murder based on the underlying felony of criminal discharge of a firearm at an occupied vehicle, but self-defense instruction given because defendant argued he fired in self-defense).

"On the other hand, many crimes do not require the use of force at all to satisfy all elements. With regard to these crimes, self-defense is legally inappropriate. When there is no use of force to be legally justified, self-defense is simply a non sequitur. Other crimes do have an element of force, but that use of force cannot legally be justified as a defense of oneself or another." 315 Kan. at ___, slip op. at 11-13.

Accordingly, the next step in Holley's case is to examine the elements of the underlying inherently dangerous felony—attempted aggravated robbery—to determine whether any of the elements in K.S.A. 2020 Supp. 21-5420 can be negated by a claim of self-defense. If no force that could be legally justified by the defense of oneself or another is necessarily an element of the offense, Holley cannot claim a legal justification under our self-defense statutes. He would thus not be entitled to either self-defense immunity or a self-defense instruction.

10

K.S.A. 2020 Supp. 21-5420 defines aggravated robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person . . . when committed by a person who[] [i]s armed with a dangerous weapon; or inflicts bodily harm upon any person in the course of such robbery." It is true that aggravated robbery includes a "force" element. But the use of force described by K.S.A. 2020 Supp. 21-5420 is a predicate and means to the second element of "knowingly taking property from the person or presence of another." The use of force for the purpose of "taking property from the person or presence of another" can never be legally justified by the defense of self or another. By way of an aside, we note that disarming an aggressor likely falls outside the scope of the statutory meaning of "taking property" as used in K.S.A. 2020 Supp. 21-5420. As such, the crime of aggravated robbery, while inherently dangerous, does not include any element that could be justified by using force in defense of oneself or another, and therefore cannot be negated by a claim of self-defense.

Given this, a self-defense instruction was not legally appropriate in Holley's case. We find it was not error for the district court to refuse to instruct the jury on self-defense, and affirm the district court as right for the wrong reasons. See *State v. Vasquez*, 287 Kan. 40, 59, 194 P.3d 563 (2008).

*The State provided sufficient evidence to support Holley's child endangerment convictions.*

Next, Holley claims the State failed to provide sufficient evidence of child endangerment. Holley claims this offense required the State to prove Holley committed the offense "knowingly." He also claims the State failed to prove there was a reasonable probability that harm would occur.

11

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Thus, we must determine whether the evidence, viewed in the light most favorable to the State, is enough to convince a rational fact-finder that Holley endangered Albin's children beyond a reasonable doubt.

Under K.S.A. 2020 Supp. 21-5601(a):

"Endangering a child is knowingly and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be endangered."

Holley first claims the State failed to prove Holley knowingly placed Albin's children in a situation where their life, body, or health may be endangered by failing to establish Holley knew the children were in the car. Under Kansas law:

"A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes." K.S.A. 2020 Supp. 21-5202(i).

12

Viewing the evidence in the light most favorable to the State, however, we find the State's evidence sufficient to persuade a rational fact-finder that Holley knew he put Albin's children in danger. The State's evidence showed that Holley watched Albin's car pull up to the house and Holley walked toward the car to get into the passenger seat. The children were strapped into their car seats the entire time. Albin testified that he washed his small, compact car that morning so the windows were clear. Investigators managed to lift Holley's fingerprint from the clean vehicle. Although Holley denied knowing the children were in the back seat at trial, the State's circumstantial evidence suggests otherwise. See *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016) (holding that the State may use circumstantial evidence to prove a defendant's culpable mental state). Based on the children being in plain sight and Holley having a chance to see the children from the outside of the car as well as when he was inside the car, we find that a reasonable fact-finder could find that Holley knowingly endangered Albin's children.

Next, Holley claims the State's evidence could not establish that there was a reasonable probability or likelihood that harm would occur to the children. We take this opportunity to clarify our caselaw on child endangerment and hold that a reasonable probability or likelihood of harm occurring is not required to prove child endangerment. Instead, probability or likelihood of harm is one of several factors for the jury to consider in child endangerment cases.

Holley relies on our holding in *State v. Fisher*, 230 Kan. 192, 631 P.2d 239 (1981), to argue a showing of reasonable probability or likelihood of harm is needed to prove child endangerment. The *Fisher* court noted that "[t]he wording of the [child endangerment] statute is broad, but the purpose is likewise broad; to prevent people from placing children in situations where their lives and bodies are obviously in imminent peril." 230 Kan. at 199 (analyzing an earlier version of the child endangerment statute that also required that the child's "life, body or health may be injured or endangered").

13

The *Fisher* court also noted, however, that the statute's use of the word "may" "means something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." 230 Kan. at 195.

In *State v. Cummings*, 297 Kan. 716, 731, 305 P.3d 556 (2013), however, we made it clear that likelihood of harm was not a requirement:

> "[W]hile the likelihood that harm will occur is a relevant consideration, it is not the sole consideration the jury must weigh in reaching its decision. Instead, the jury should be instructed on three considerations: (1) the gravity of the threatened harm, (2) the legislature's or regulatory body's independent assessment that the conduct is inherently perilous, and (3) the likelihood that harm to the child will result or that the child will be placed in imminent peril."

Today, we stand by *Cummings* and hold that proof of a likelihood of harm is not required to prove child endangerment. Rather, likelihood of harm is a consideration the jury must weigh in reaching its decision along with the gravity of the threatened harm and the Legislature's assessment of whether the conduct is inherently perilous.

With those considerations in mind, we find the State's evidence sufficient to convince a rational fact-finder that Holley placed Albin's children in a situation in which their life, body, or health may have been endangered. The State's evidence showed that Holley pulled his gun out in the passenger seat of Albin's small, compact car. Holley pointed and threatened to shoot Albin in close proximity to the children. Even though the gun was pointed at Albin rather than the children, there was still a threatened harm that a bullet could ricochet or debris could have come across the children in such a confined area.

14

Further, according to the Legislature, Holley's conduct was inherently dangerous. In Kansas, both robbery and aggravated robbery are inherently dangerous felonies. See K.S.A. 2020 Supp. 21-5402(c)(1)(C), (D). When Holley demanded Albin hand over his wallet and threatened him with a gun, he committed aggravated robbery. K.S.A. 2020 Supp. 21-5420(b)(1). Thus, Holley involved the children in an inherently dangerous felony. See *State v. Daniels*, 278 Kan. 53, 72-73, 91 P.3d 1147 (2004) (holding that evidence of defendant planning to involve a minor in aiding and abetting in an aggravated robbery was enough evidence to uphold a child endangerment conviction). Because we find the State's evidence sufficient to support Holley's child endangerment convictions, we affirm his child endangerment convictions.

*Holley's errant lifetime postrelease supervision sentence is vacated.*

Holley asserts that the district court erred when it ordered lifetime postrelease supervision instead of lifetime parole. See K.S.A. 2020 Supp. 22-3717(b)(2) (providing a convicted person is eligible for parole after 25 years of incarceration). Holley also argues that district courts lack authority to order postrelease supervision in conjunction with an off-grid, indeterminate life sentence.

We agree. We have previously held that a sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid, indeterminate life sentence. *State v. Becker*, 311 Kan. 176, 191, 459 P.3d 173 (2020). We customarily vacate errant lifetime postrelease supervision sentences without remand. See, e.g., 311 Kan. at 191 ("The improper imposition of lifetime postrelease supervision can be vacated, allowing the district court to correct the judgment without the need for further proceedings."); *State v. Satchell*, 311 Kan. 633, 648, 466 P.3d 459 (2020); *State v. Gibson*, 311 Kan. 732, 745-46, 466 P.3d 919 (2020) ("Gibson is correct that the court improperly ordered lifetime postrelease supervision, but his request to remand for

15

resentencing is not warranted. Instead, this portion of this sentence is vacated."). We therefore vacate Holley's lifetime postrelease supervision sentence.

*We decline to vacate the district court's restitution order.*

Lastly, Holley asks us to vacate the district court's restitution order against him. He claims if restitution orders are civil remedies, the district court violated his rights guaranteed by section 5 of the Kansas Constitution Bill of Rights. Alternatively, he asserts if restitution orders are criminal punishment, the district court's "judicial fact-finding violates the criminal jury trial right guaranteed by Section 5 and the Sixth Amendment of the United States Constitution."

Holley did not raise this issue before the district court. Generally, this would bar him from asserting this issue for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Even constitutional grounds for reversal asserted for the first time on appeal are not properly preserved. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 35) requires an appellant to explain why he or she failed to raise an issue below and why it should be considered for the first time on appeal. We strictly enforce this rule. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

However, several exceptions exist: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). But the decision to review an unpreserved claim under an exception is a prudential one—even if one of these

16

exceptions would support a decision to review a new claim, we have no obligation to do so. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

Holley admits he failed to raise this issue below, but he urges us to apply an exception and review his claim. We need not belabor the preservation question because we recently settled these issues in *State v. Arnett*, 314 Kan. 183, 496 P.3d 928 (2021). In *Arnett*, we first held that the current Kansas criminal restitution statutes do not trigger Sixth Amendment protections. 314 Kan. 183, Syl. ¶ 1. We also severed the problematic portions of the Kansas criminal restitution statutes which we found were "virtually identical to a civil judgment." 314 Kan. 183, Syl. ¶¶ 3, 5. We concluded:

> "[R]estitution may still be imposed by a judge either as part of the sentence—as contemplated by K.S.A. 2020 Supp. 21-6604(b)—or as a condition of probation—as contemplated by K.S.A. 2020 Supp. 21-6607(c)(2).
>
> "However, a criminal defendant will not be faced with a civil judgment for restitution unless it has been obtained separately through a civil cause of action. In this way, criminal restitution is—once again—not a legal obligation equivalent to a civil judgment and does not violate section 5." 314 Kan. at 196.

Here, the district court properly imposed restitution as a part of Holley's sentence as contemplated by K.S.A. 2020 Supp. 21-6604(b). *Arnett* dictates that Holley cannot face a civil judgment for restitution unless it is obtained through a separate, civil cause of action, and forecloses Holley's claim that this court must vacate the restitution order.

In conclusion, we affirm Holley's convictions, vacate his errant lifetime postrelease supervision sentence, and decline to vacate the district court's restitution order.

17