NOT DESIGNATED FOR PUBLICATION

No. 127,855

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GINA MARIE WHITEFORD,
*Appellant*.


MEMORANDUM OPINION


Appeal from Harvey District Court; MARILYN M. WILDER, judge. Submitted without oral argument. Opinion filed June 6, 2025. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before PICKERING, P.J., BRUNS and SCHROEDER, JJ.


PER CURIAM: Gina Marie Whiteford appeals her conviction for methamphetamine possession. During a vehicle search stemming from a police dog sniff, police found a handbag containing methamphetamine and Whiteford's driver's license. Whiteford filed a pretrial motion to suppress, in part claiming the vehicle search was illegal because Whiteford did not own the vehicle and police improperly conducted the dog sniff without reasonable suspicion. The district court denied the motion.

1

On appeal, Whiteford argues the search lacked probable cause because there was insufficient evidence that the police dog alerted to drugs in the vehicle. After reviewing the record, we find Whiteford raises this claim for the first time on appeal and does not assert a preservation exception. Thus, we decline to review the merits.

FACTUAL AND PROCEDURAL BACKGROUND

In the evening of November 7, 2021, Whiteford and her daughter went to Kwik Shop in Newton, Kansas, to get something to eat. They arrived in a GMC Sierra that Whiteford's daughter had borrowed from a relative. Around that same time, Halstead Police Officer Logan Miller also arrived at Kwik Shop. Once inside the store, he recognized Whiteford from "prior dealings." Among those prior dealings was a prior instance when Miller's police service dog conducted a dog sniff on one of Whiteford's cars, during which the dog "indicated positive."

Upon recognizing Whiteford, Miller called Newton Police Officer Jacob Garver, advising him that he had seen Whiteford and recognized a vehicle in which he had previously found narcotics after a dog sniff. Garver understood that Miller's call was a "courtesy" since Miller was outside Halstead city limits. Miller did not recall how long after the call Garver arrived at the scene. Once Garver arrived, he requested that Miller's service dog perform a "free air sniff" on the vehicle. While Miller's dog conducted the sniff, Garver was inside the store along with Whiteford and her daughter, engaging in general conversation with the two.

After the dog sniff, Miller informed Garver that he had "a good indication." Garver then told Whiteford, who was leaving the store at that point, that she was not free to leave. Garver then searched the vehicle. During the search, Garver found a green handbag containing Whiteford's driver's license and, in the handbag's zipper pocket, methamphetamine. Garver did not indicate where in the vehicle the green handbag was

2

located. The record is also unclear whether the methamphetamine was contained in a bag or other packaging.

The State charged Whiteford with one count of unlawful possession of a controlled substance (methamphetamine) and one count of possession of drug paraphernalia.

Before trial, Whiteford moved to suppress "all physical evidence, items, documents and any other information discovered and seized by law enforcement officials on November 7, 2021, as well as any statements, admissions, confessions or other information obtained from . . . Whiteford." The motion alleged: "The police confronted the defendant inside the store without probable cause and illegally took her outside the store and conducted an illegal search of defendant and the vehicle in which she had been a [passenger]." Whiteford also argued:

"The detention and interrogation and the resulting search [of the] defendant was illegal because (1) it was conducted without a warrant, (2) it was conducted after an illegal detention of the defendant, (3) it was conducted without probable cause, (4) there were no exigent circumstances, and (5) it was not conducted with voluntary consent."

At the suppression hearing, Garver and Miller testified for the State. Whiteford testified on her own behalf. According to Miller, during the dog sniff, the dog "gave [Miller] an alert on the vehicle and then he gave [Miller] a final indication that there was possibly illegal narcotics within the vehicle." Miller explained, "An alert is him like freezing in motion. It depends on the handler. You can search the vehicle on that, but I wanted something a little stronger, so he continued to move down the vehicle and he gave a final indication on the front passenger door of the truck."

Miller also testified to the dog's training and certification. The dog went through certification once a year, and Miller trained with the dog for 12 hours every 2 weeks. The dog had never failed certification. At the time of the suppression hearing, Miller had been paired with the dog for a year and a half. Miller stated the dog does not alert on every vehicle.

The district court denied Whiteford's motion to suppress. In relevant part, the court found there was probable cause for the vehicle search:

> "The officers were allowed to conduct the free air sniff on the exterior of a car parked in a public lot without consent and without reasonable suspicion. The next question, then, is whether officers then had the right to search the interior of the vehicle without the consent of anyone using the vehicle, Ms. Whiteford or her daughter. According to the Kansas Supreme Court in *State v. Barker*, 252 Kan. 949 (1993), a narcotics dog's reaction to a vehicle may supply probable cause to search a vehicle but there must be some evidence of reliability of that dog's reaction. Although the State did not go into great detail in soliciting testimony from Officer Miller regarding the dog's conduct, training and experience, there was testimony of that nature and no objection was made on the basis of that testimony or lack thereof. The Court did hear testimony about the training for the dog and the officer, . . . that the dog does not alert on every vehicle sniffed, . . . and that the dog gave both an 'alert' and a 'final indication' on the vehicle . . . . He further testified that the dog gave a 'good indication' on the vehicle. . . . Thus, the Court can reasonably find that the officers had probable cause to search the vehicle based upon the dog's reaction.
>       . . . .
>       ". . . Once the dog alerted, the officers then had probable cause to search the vehicle."

The case proceeded to a bench trial on stipulated facts. At the State's request, the district court dismissed count II—possession of drug paraphernalia. The district court then found Whiteford guilty of one count of possession of methamphetamine. Upon a

4

joint recommendation for probation, the district court sentenced Whiteford to a 30-month underlying prison sentence but granted 18 months' probation.

Whiteford now appeals.

*Whiteford has failed to preserve this issue.*

On appeal, Whiteford claims the district court's finding that the dog alerted to drugs was not supported by substantial competent evidence and, therefore, the district court erred in finding there was probable cause to search the vehicle. She claims she preserved the "suppression issue" because she filed a motion to suppress the evidence seized from her vehicle and "expressly 'reserved all rights'" regarding that motion at the bench trial. The State argues that Whiteford failed to preserve this issue, claiming she never challenged the reliability of the drug dog's alert at the district court.

Whiteford responds with three arguments for why this issue is preserved: (1) She argued in her motion to suppress that the vehicle search lacked probable cause; (2) "the State had the burden to show that the dog truly alerted on the truck to sufficiently establish probable cause"; and (3) the district court found the dog alerted on the vehicle. Whiteford contends that because she challenged probable cause in her motion to suppress, her argument on appeal is "the same argument that officers had insufficient probable cause for the search." Whiteford does not alternatively argue that any exceptions to the preservation rule apply.

Generally, issues not raised at the district court cannot be raised for the first time on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). There are three exceptions to this rule: (1) "'[T]he newly asserted claim involves only a question of law

5

arising on proved or admitted facts and is finally determinative of the case'"; (2) consideration of the argument "'is necessary to serve the ends of justice or to prevent the denial of fundamental rights'"; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). An appellate court's "'decision to review an unpreserved claim . . . is a prudential one.'" *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

"Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 35) requires an appellant to explain why he or she failed to raise an issue below and why it should be considered for the first time on appeal. We strictly enforce this rule." *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022).

K.S.A. 22-3216(2) provides a motion to suppress "shall be in writing and state facts showing wherein the search and seizure were unlawful." In *State v. McLarty*, No. 117,392, 2018 WL 1546282, at *6 (Kan. App. 2018) (unpublished opinion), a panel of this court stated:

> "K.S.A. 22-3216 indicates all of the grounds supporting the suppression of evidence must be raised in a motion to suppress prior to trial. Additionally, there is no support in K.S.A. 22-3216 to permit this court to entertain such a motion based on new factual grounds for the first time on appeal, and doing so would defeat the purpose of K.S.A. 22-3216."

The Supreme Court considered whether a defendant preserved a suppression argument for appeal in *State v. Ton*, 308 Kan. 564, 422 P.3d 678 (2018). There, Ton claimed in his motion to suppress that police illegally seized a package without reasonable suspicion. On appeal, in addition to the reasonable suspicion argument, Ton claimed police "detained his package for an unreasonable length of time." 308 Kan. at 570. Ton contended that "Supreme Court Rule 6.02(a)(5) required him to present only his 'issue'" at the district court, which he claimed he did by arguing that the package seizure

6

violated his Fourth Amendment rights. 308 Kan. at 570. Ton also asserted that "it was the State's burden to prove 'the legality of its warrantless seizure in every aspect.'" 308 Kan. at 570.

The Supreme Court found Ton's preservation argument unavailing. The court determined that "Ton affirmatively narrowed the scope of his argument, resulting in a suppression hearing focused on whether authorities had reasonable suspicion to detain the package. In effect, Ton's arguments directed the district court to make findings and conclusions related only to the presence of reasonable suspicion." 308 Kan. at 571-72. Therefore, the court concluded, "the record on appeal lacks the findings Ton needs to support his argument and the record an appellate court needs to review his claim." 308 Kan. at 572.

Here, Whiteford did not specifically argue in her motion to suppress or at the suppression hearing that Miller's dog did not alert on the vehicle or that the alert was unreliable. She challenged the vehicle search because she was not the vehicle's owner and argued that a dog sniff required reasonable suspicion. At the suppression hearing, the State still presented evidence of the dog's alert on the vehicle. The district court specifically found, based on Miller's testimony, "the dog gave both an 'alert' and a 'final indication' on the vehicle" and that "the officers had probable cause to search the vehicle based upon the dog's reaction." The court also noted in its suppression ruling that "no objection was made on the basis of [Miller's dog sniff] testimony or lack thereof." Therefore, while the district court found probable cause from the dog sniff, it did not consider whether Miller's testimony on the dog's conduct, training, and certification was sufficient because Whiteford did not argue this issue. As such, Whiteford has not preserved this issue for appeal.

Appellate courts "strictly enforce" the rule that an appellant must explain why an issue should be reviewed for the first time on appeal. *Holley*, 315 Kan. at 524. Whiteford

7

does not assert any exceptions to the preservation rule. We, therefore, decline to review Whiteford's sole issue on appeal.

Affirmed.