NOT DESIGNATED FOR PUBLICATION

No. 128,582

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BILLIE ELLIOTT,
*Appellant*,

v.

JEFF ZMUDA, Secretary of the Kansas Department of Corrections, et al.
*Appellees*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Submitted without oral argument. Opinion filed August 22, 2025. Appeal dismissed.

*Chris J. Pate*, Pate & Paugh, LLC, for appellant.

*Elizabeth Fowler*, legal counsel, Kansas Department of Corrections, for appellees.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Billie Elliott is no stranger to postconviction litigation and now appeals the district court's dismissal of his most recent K.S.A. 60-1501 petition, in which he claims the El Dorado Correctional Facility (EDCF) unconstitutionally denied him possession of two model kits. The district court found Elliott failed to state a claim upon which relief could be granted and summarily dismissed both his petition and his motion to alter or amend the judgment. On appeal, Elliott pursues only an argument regarding the constitutionality of a regulation which prevented him from possessing the model kits. However, Elliott did not present this constitutional argument to the district court, and after reviewing the record, we dismiss his claim as unpreserved.

1

FACTUAL AND PROCEDURAL BACKGROUND

Given the nature of this appeal, the details of Elliott's underlying criminal conviction are not pertinent to our review, but they are recited in our court's decision affirming his conviction on direct appeal. *State v. Elliott*, No. 79,012, 1999 WL 35814156, at *1 (Kan. App. 1999) (unpublished opinion). Elliott is currently incarcerated at EDCF in Butler County.

Elliott participated in the Handicraft inmate program, which allowed him to purchase and assemble model kits. He was permitted to purchase and complete models made of wood or plastic and sold some of his completed models to the staff at EDCF. According to Elliott, many of these models included small metal parts necessary for the movement of the models, such as axels, gears, and springs.

In January 2023, EDCF personnel withheld and denied Elliott the possession of two model kits that he had ordered. Elliott claimed that in the past he was allowed to possess and assemble the same two model kits that EDCF denied him in this instance. EDCF provided Elliott with the option to decide how he would like the two model kits to be handled. According to the form EDCF provided Elliott, he could choose to have the two kits picked up by a visitor or an authorized person, donated to a charitable organization, destroyed, delivered to the local address on file, or shipped to a specific person. Elliott did not elect any of the options on the form but instead responded with an "Inmate Request to Staff Member," asking EDCF to put a hold on the kits until his grievance and the civil suits he intended to file were resolved.

In his grievance, Elliott alleged that his property—the two model kits—was withheld in violation of internal offender mail procedures, his due process rights under the Fourth and Fourteenth Amendments to the United States Constitution, and K.A.R. 44-12-601. EDCF, through its unit team head, denied Elliott's grievance, reasoning that the

possession of model kits is allowed but metal parts are prohibited according to Inmate Management Policy and Procedure l0-133—which describes the Handicraft program—and General Order 15-103. Elliott appealed this decision and the warden of EDCF denied that appeal. Elliott then appealed his grievance to the Secretary of the Kansas Department of Corrections (KDOC). KDOC denied his appeal on September 13, 2023. The "Received" stamp on the KDOC's denial is illegible, but it appears that the EDCF warden may not have received the denial until mid-October 2023.

On November 22, 2023, Elliott filed a writ of habeas corpus under K.S.A. 60-1501 in Butler County District Court, alleging that the KDOC through EDCF withheld his personal property and denied him privileges without due process. The district court notified Elliott of deficiencies in his petition and ordered him to submit supplemental documents supporting his claim, including copies of the grievances Elliott filed, and to amend his petition to "clearly state what limited inmate due process rights he believes have been violated, what about this matter shocks general conscience or exceeds the norm or common incidence experienced by the typical inmate in an institutional setting." Elliott complied by submitting additional documents, including copies of grievance forms he previously filed, with all attachments, and documentation regarding previous approval and purchases of various model kits.

The district court found that Elliott did not have a property interest in possessing metal objects that the prison authorities deemed prohibited because the prison officials have wide discretion in administering policies regarding security and safety of the inmates and staff. As for Elliott's retaliation claims, the district court found the claim was only speculation, as he "offer[ed] nothing other than his personal opinion that the prison authorities must [be] retaliating against him for filing other lawsuits." Finding Elliott failed to state a claim upon which relief could be granted, the district court summarily denied his petition.

3

Elliott then filed motions to alter or amend the judgment and to appoint counsel. He alleged that the district court judge was corrupt and had been treating his petition unfairly due to previous bias against inmate litigants. He also contended that he was discriminated against and retaliated against for his previous civil actions against EDCF. The district court denied Elliott's motions to alter or amend summarily without providing any supporting reasons and reserved ruling on his motion for counsel on any future appeal.

Elliott timely appeals.

ANALYSIS

Elliott argues the district court erred by summarily denying his habeas petition. Although he acknowledges that reasonable restrictions may be placed on the type of property an inmate may possess, Elliott—for the first time on appeal—argues that the process by which the prison withheld his property in accordance with Kansas regulations, specifically K.A.R. 44-12-601(d), was inadequate. This regulation sets out the grounds for censorship of inmate mail and the requirements the prison must meet when mail is censored.

Elliott reasons that the regulation is unconstitutionally vague, which in turn violates his due process rights. He argues that K.A.R. 44-12-601(d)(l) does not provide fair notice to inmates of prohibited conduct, and people of common intelligence have differing views as to the proper application of the regulation. Elliott contends that he should have been afforded an evidentiary hearing to show that he was deprived of his personal property in violation of his due process rights.

4

*Limitations Question*

Neither the district court nor either party addresses the timeliness of Elliott's petition. As recited above, although the date of Elliott's receipt of the denial is unclear, KDOC denied his most recent grievance on September 13, 2023. He then filed his petition for a writ of habeas corpus on November 22, 2023.

Under K.S.A. 2023 Supp. 60-1501(b), a petition for habeas corpus relief directed to the KDOC must be filed within 30 days of the act causing the constitutional deprivation. *Knittel v. Kansas Prisoner Rev. Bd*., No. 111,552, 2014 WL 6777450, at *3 (Kan. App. 2014) (unpublished opinion). Regardless of the date of Elliott's receipt of it, the Secretary's denial of his grievance, then—not Elliott's receipt of it—would start the clock running on the 30-day period. We must question, then, whether Elliott's petition was timely filed, since he filed it approximately 70 days after the KDOC's decision.

That said, even if his petition was untimely filed, other decisions by our court have viewed the 30-day period for the filing of a 60-1501 petition as more analogous to a statute of limitations than to a jurisdictional bar. *Guilbeaux v. Schnurr*, No. 121,032, 2020 WL 110836, *3 (Kan. App. 2020) (unpublished opinion) (citing *Knittel*, 2014 WL 6777450, at *3 [citing other decisions of the Kansas appellate courts that view K.S.A. 60-1501(b) as a statute of limitations for habeas corpus petitions]). Statutes of limitations do not impose jurisdictional bars—they are affirmative defenses that may be waived. *State v. Sitlington*, 291 Kan. 458, 463, 241 P.3d 1003 (2010); *Knittel*, 2014 WL 6777450, at *3.

Here, the KDOC and EDCF appellees never presented a defense based upon the timeliness of Elliott's petition, either to the district court or on appeal. As a result, we deem the defense waived and proceed to address his appeal.

5

*Applicable Legal Standards*

The dismissal and summary judgment standards found in the ordinary rules of civil procedure do not apply in habeas corpus proceedings brought under K.S.A. 60-1501. Instead, our court applies the legal framework established by the Legislature in Article 15 of K.S.A. Chapter 60. *Denney v. Norwood*, 315 Kan. 163, 170-72, 505 P.3d 730 (2022).

At the initial assessment stage of a K.S.A. 60-1501 petition, a district court must accept all well-pled factual allegations in a habeas corpus petition as true when determining whether a writ of habeas corpus should be issued. 315 Kan. at 173. To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f it is apparent from the petition and attached exhibits that the petitioner is entitled to no relief, then no cause for granting a writ exists and the court must dismiss the petition." *Denney*, 315 Kan. at 173. See K.S.A. 2023 Supp. 60-1503(a). An appellate court exercises de novo review of a summary dismissal. *Denney*, 315 Kan. at 175.

*Preservation*

As a gatekeeping concern, the appellees contend that Elliott's sole argument is being raised for the first time on appeal. Appellees explain Elliott did not advance any arguments in the district court challenging the constitutionality of the applicable regulation, K.A.R. 44-12-601(d). According to the appellees, the journal entry of the district court's summary dismissal likewise does not reference this regulation, indicating that the district court did not have the opportunity to address this issue.

It is well established that issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). There are several

6

exceptions to this general rule, though, including when: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). An appellate court's decision to review an unpreserved claim under an exception is prudential; even if an exception applies, the appellate court is not necessarily obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021); but see *State v. Unruh*, 320 Kan. 260, 264-65, 565 P.3d 825 (2025) (despite appellant's failure to elect an applicable exception, the appellate court is still required to assess whether his due process theories are amenable to resolution on the merits given the existing record).

In addition to this principle, Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal in its opening brief. *Schutt v. Foster*, 320 Kan.__, 2025 WL 2092124, at *4-5 (2025) (appellants must identify these exceptions in their opening brief, and the failure to do so precludes appellate review of unpreserved issues). Our Supreme Court has long warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply risked a ruling that the issue was improperly briefed and would be deemed waived or abandoned. 2025 WL 2092124, at *6 (an appellant who relies on a preservation exception must invoke the exception, and by failing to do so is deemed to have waived and abandoned any such exception to the preservation rule). See *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022); *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015); and *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Elliott neglects to articulate whether any of the preservation exceptions should apply to his argument—in fact, he does not acknowledge the novelty of his constitutional argument at all.

Here, the record shows Elliott did not raise the vagueness challenge against K.A.R. 44-12-601(d)(1) in his grievances and appeals through KDOC channels. Although Elliott briefly mentions the regulation in his grievance, its reference is only in the context that EDCF did not follow its own rules, generally. Nor does Elliott challenge the regulation for vagueness, or even mention the regulation *at all*, in his K.S.A. 60-1501 petition or his supplemental filings, aside from attaching a copy of the regulation to his petition. In fact, the only relief Elliott sought in his petition was that he simply "wishes to be able to resume enjoying the Handicraft privileges." Elliott fails to demonstrate why this issue regarding the constitutionality of the regulation was not raised before the district court and why it should be considered by this court for the first time on appeal.

In *State v. Stubbs*, 320 Kan. ___, 570 P.3d 1209, 1219 (2025), our Supreme Court examined the two distinct constitutional requirements a statute must satisfy to avoid vagueness: fair notice (the due process element) and clear standards which prevent arbitrary enforcement. Here, Elliott suggests the regulation violates both prongs, arguing that "K.A.R. 44-12-601(d)(l) does not provide fair notice *to the Petitioner* of the prohibited conduct, and persons of common intelligence certainly have differing views as to the application of the regulation." (Emphasis added.) He claims that he could not *personally* have been on notice of the prohibited conduct, since he was previously allowed to possess the model kits, and that KDOC's pattern and practice show that the regulation has a history of arbitrary enforcement. And this is essentially the sum of his vagueness arguments.

Appellate courts, including the United States Supreme Court and the Kansas Supreme Court in *Stubbs*, have treated arbitrary-enforcement challenges as facial challenges and reached the merits of those claims. 570 P.3d at 1220 (citing *Chicago v. Morales*, 527 U.S. 41, 71, 119 S. Ct. 1849, 144 L. Ed. 2d 67 [1999]; *Kolender v. Lawson*, 461 U.S. 352, 358 n.8, 103 S. Ct. 1855, 75 L. Ed. 2d 903 [1983]). But in *Stubbs*, neither the appellant nor the court addressed the first prong, the notice requirement of a

8

vagueness challenge; it focused on standing in an arbitrary-enforcement claim. 570 P.3d at 1222-23.

Here, even if we were to ignore Elliott's lack of compliance with Supreme Court Rule 6.02(a)(5), and address the arbitrary enforcement challenge on its face, Elliott clearly claims he personally lacked notice, a claim which involves factual assertions which should have been presented and decided by the district court—not decided for the first time on appeal.

For instance, making findings regarding the nature of the notice he was personally provided is the purview of the district court. Other portions of his due process argument would likewise benefit from district court review, such as the difference between possession of property and ownership. See, e.g., *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (Federal prisoner who was allowed to send the property he could not possess in prison to a place of his choosing was not deprived of an ownership property interest.). In fact, the record demonstrates that EDCF provided Elliott multiple options to dispose of the withheld property, but he opted instead to file suit. Whether Elliott was deprived of a property interest is a legal question but answering that question involves facts to be discerned by the district court.

There also remain questions about whether and how Elliott paid for the specific kits, which precise kits he references in his petition, and whether he now has possession of them. The KDOC suggests that Elliott is again participating in the Handicraft program and disputes the receipts he provided with his 1501 petition, and whether those receipts actually belong to the model kits described in his petition. These are all questions that would have benefitted from the district court's analysis and findings.

9

Because of Elliott's failure to raise the constitutional claim he "deprived the trial judge of the opportunity to address the issue in the context of this case." *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). This is not a proper case in which we should

> "invoke an exception to the general rule that issues must first be raised before the district court. To the contrary, it highlights the rationale for the general rule, which is to provide the trial judge an opportunity to consider the matter and articulate the reasons for his or her decision." *State v. Spidel*, No. 101,659, 2010 WL 1610300, at *3 (Kan. 2010) (unpublished opinion).

Under the facts of this case, we find that Elliott did not preserve the constitutional question for our review. As a result, we exercise our discretion to decline review of Elliott's argument on the constitutionality of K.A.R. 44-12-601. Because this is the singular argument Elliott now advances on appeal, any other arguments are waived and abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). And because his constitutional argument is unpreserved, we must dismiss his appeal.

Appeal dismissed.