NOT DESIGNATED FOR PUBLICATION

No. 127,885

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PHILIP MICHAEL GABLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Submitted without oral argument. Opinion filed November 21, 2025. Affirmed.

*Jessica R. Kunen*, of Lawrence, for appellant.

*Jon Simpson*, senior assistant district attorney, *Dakota Loomis*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., COBLE, J., and SEAN M.A. HATFIELD, District Judge, assigned.

PER CURIAM:  Philip Michael Gabler appeals his convictions by a jury of domestic battery and criminal damage to property. Gabler claims there was insufficient evidence to support the conviction for domestic battery and the special finding of domestic violence. He also claims the domestic battery statute is unconstitutionally vague. For the reasons explained below, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Gabler with one count of domestic battery and one count of criminal damage to property based on an incident on January 3, 2023, between Gabler and his ex-girlfriend, Michaela Durner. The case proceeded to a jury trial on March 13, 2024. Durner testified that she and Gabler were in a "romantic relationship" that started in 2019 and ended in 2021. Durner did not expand on the details of their relationship. After the two broke up they remained in contact. On January 3, 2023, Durner spoke on the phone with Gabler before Durner excused herself from the call. Durner's friend, Mitchell McCune, was coming over to Durner's apartment after Durner's phone call with Gabler.

Gabler later tried to call Durner many times and was agitated and asked why Durner needed to end the phone call. Eventually, Gabler showed up at Durner's apartment and pounded on the front door. Durner testified that Gabler was aware she was inside the apartment, and the two of them were talking on the phone. Gabler continued pounding at the door and asking over the phone to speak with Durner, who refused. Gabler eventually recognized McCune's vehicle parked outside the apartment and "got more and more agitated." Durner asked Gabler to drive to a nearby McDonalds and send a Snapchat message that he was there so that McCune could escape the apartment.

Gabler eventually left Durner's front door and returned to his truck, but he soon came back to the door. Gabler continued pounding the door and "saying incoherent things" before he eventually kicked in the door. When Gabler kicked the door, Durner was standing near it and a piece of the doorframe inside the apartment broke off and hit Durner in the head. The doorframe hitting Durner's head left "a pretty big goose egg" and a bruise at the point of impact. After kicking in the door, Gabler stood in the now open doorway, laughed, and then left when he realized Durner was calling the police. McCune was standing behind Durner when Gabler kicked in the door.

2

McCune testified next. McCune went to a back room of the apartment during most of the time Gabler was pounding at the door so that Gabler would not hear that McCune was inside. McCune affirmed that, through a phone call, Durner tried to get Gabler to go to a nearby McDonalds so McCune could leave without incident. "[W]hen things escalated," McCune moved from the back room to the front door. McCune testified that Gabler briefly walked away from Durner's front door to go through McCune's vehicle outside. When McCune reached the front door, Gabler had just returned to the door and kicked it in. McCune testified that Gabler looked shocked standing in the now open doorway and laughed. Gabler left after Durner yelled for him to leave.

McCune testified that Gabler's kick shattered the door jam and caused the "trim, molding" to go "[i]nto [Durner]'s forehead." McCune believed Durner was bleeding afterward. On cross-examination McCune agreed the door appeared sturdy before Gabler kicked it in. McCune affirmed that Gabler "kind of panicked" after he kicked the door as if surprised by his own actions.

The final witness was Jeremiah Risner, the responding officer with the Lawrence Police Department. When Risner arrived, he contacted McCune and Durner, who reported what happened. Durner reported she was on the phone with her "ex-boyfriend," Gabler, and during the phone call McCune came over to Durner's apartment. Gabler became upset that Durner had to get off the phone, and Durner did not want to tell Gabler why she wanted to end the call because Gabler did not like her having male friends. Risner affirmed that the doorframe "had been forcibly removed." Risner photographed a shoeprint on the outside of the front door. Risner observed "a small lump on [Durner's] forehead" resulting from the doorframe hitting it. Risner photographed those injuries. On cross-examination Risner specified that Durner and Gabler spoke to each other during the incident through the apartment door as well as over the phone. Durner and McCune reported to Risner that after kicking in the door, Gabler seemed panicked. Durner and McCune yelled at Gabler to leave, and he complied.

Gabler declined to testify and presented no evidence in his defense. At closing argument, Gabler argued that the State failed to prove he acted recklessly to support a conviction for domestic battery because he did not know Durner was on the other side of the door when he kicked it nor was he aware of the risk of harm to Durner. The jury found Gabler guilty of domestic battery and criminal damage to property and found that the offenses were acts of domestic violence. The district court sentenced Gabler to concurrent terms of 120 days in jail on each count and ordered $657.13 in restitution. Gabler timely appealed the district court's judgment.

ANALYSIS

*Sufficiency of the evidence*

Gabler first claims there was insufficient evidence to support his domestic battery conviction. He argues the State failed to prove that he acted recklessly toward Durner and that he and Durner had been involved in a dating relationship. He also argues that the evidence did not support a finding of domestic violence. The State responds that the evidence was sufficient to support the verdict and the special finding. Gabler does not challenge the sufficiency of the evidence to support his criminal damage to property conviction. An issue not briefed is waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

"When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

K.S.A. 2022 Supp. 21-5414(a)(1), the version of the statute in effect when Gabler committed his offenses, defines domestic battery as: "Knowingly or recklessly causing

4

bodily harm to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member." The State did not argue at trial that Gabler acted knowingly and instead focused on proving he acted recklessly. The reckless mens rea is defined in K.S.A. 21-5202(j) as when a person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

Gabler asserts that insufficient evidence supports a recklessness finding because the evidence shows he did not know that Durner was standing near the door when he kicked it and his disregard did not amount to a gross deviation from the reasonable person standard of care. Gabler points out that he looked confused after he kicked the door in as evidence that he did not act recklessly nor did he expect Durner to be injured. But this court will not reweigh the evidence or resolve conflicts in evidence, it will instead review the evidence in the light most favorable to the State to determine whether a rational-fact finder could agree with the jury's finding. *Mendez*, 319 Kan. at 723.

Applying that standard, Risner testified that Durner and Gabler communicated through the door as well as over the phone. That communication through the door supports a reasonable inference that Gabler should have been aware of a high likelihood that Durner was immediately on the other side of the door while he was outside. McCune testified that the door looked sturdy, creating a reasonable inference that Gabler had to kick it with significant force to break it open and break the doorframe. Kicking the door with such significant force while communicating with Durner on the other side creates a commonsense inference that Gabler consciously disregarded a substantial and unjustifiable risk that his forceful kick would result in the door or part of the door moving quickly and unexpectedly hitting Durner.

5

Gabler pounded on the apartment door and sought entry, showing his awareness that Durner was inside. There is a commonsense inference that when Gabler pounded on the door in an agitated manner, that any occupants in the apartment including Durner would gather around the door to monitor the situation and observe Gabler's conduct to decide, for example, whether to answer the door, call the police, or any response between. Durner and Risner testified that Gabler was agitated because Durner wanted to end her phone call with him and because McCune was inside the apartment. A reasonable juror could find that neither of those facts justified kicking the door in and creating a substantial risk of harm to Durner on the other side. In the same manner, a reasonable juror could conclude from this evidence that kicking the door under these circumstances was a gross deviation from the standard of care a reasonable person would exercise. Sufficient evidence supports the jury's finding that Gabler acted recklessly.

Gabler also asserts that insufficient evidence supports a finding that he had been involved in a dating relationship with Durner as is required for both the domestic battery conviction and a domestic violence designation under K.S.A. 22-4616(a). K.S.A. 22-4616(a) relies on the definition of domestic violence in K.S.A. 21-5111(i), which defines an act of domestic violence in pertinent part as "an act or threatened act of violence against a person with whom the offender is involved or has been involved in a dating relationship, or an act or threatened act of violence against a family or household member by a family or household member." K.S.A. 2022 Supp. 21-5414(e)(1) and K.S.A. 21-5111(i)(1) identically define a dating relationship as

> "a social relationship of a romantic nature. In addition to any other factors the court deems relevant, the trier of fact may consider the following when making a determination of whether a relationship exists or existed: Nature of the relationship, length of time the relationship existed, frequency of interaction between the parties and time since the termination of the relationship, if applicable."

6

Gabler asserts that the evidence did not show whether his and Durner's prior relationship was sexual, consistent, or how much they spoke during that time. Therefore, he asserts the evidence was insufficient to show the two had been in a dating relationship. The State argues that it need not prove every detail of Durner's and Gabler's relationship, only that they were in a dating relationship at some point.

We find the evidence was sufficient to prove Gabler and Durner had been in a dating relationship before Gabler committed the offenses. Durner testified that she and Gabler were in a "romantic relationship" from 2019 to 2021. A reasonable juror could find that evidence satisfies the "romantic nature" of the relationship. Durner testified that the two "broke up" in 2021. The use of that well-understood term creates a reasonable and commonsense inference that the two "broke up" from a dating relationship. Durner also reported to Risner that Gabler was her "ex-boyfriend," a common term for a prior partner in a dating relationship.

The statutory definition of "dating relationship" for both domestic battery and a domestic violence designation allows the fact-finder to consider as nonexclusive factors things such as: "[the n]ature of the relationship, length of time the relationship existed, frequency of interaction between the parties and time since the termination of the relationship, if applicable." K.S.A. 2022 Supp. 21-5414(e)(1); K.S.A. 21-5111(i)(1). The jury was instructed on those factors. In the light most favorable to the State, the evidence described above could lead a rational fact-finder to conclude that the nature of the relationship was romantic because Durner used that exact term, that the relationship was long-term because it lasted for two years, and that the relationship was recent to the offenses. Thus, a rational juror could find from the evidence that three of the four statutorily enumerated factors swung in favor of finding a dating relationship had existed.

While the evidence did not show the details of that relationship to Gabler's satisfaction, Gabler also does not show that the State had to prove that level of detail

7

under any statute. Sufficient evidence supported the jury's finding that Durner and Gabler were in a mutual and dating relationship from 2019 to 2021. Gabler does not challenge the sufficiency of the evidence as to any other finding below, so we conclude the evidence sufficient to support the verdicts beyond a reasonable doubt.

*Constitutional challenge*

Gabler next claims K.S.A. 2022 Supp. 21-5414(a)(1) is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment to the United States Constitution in how the statute defines a "dating relationship." A statute's constitutionality is a question of law subject to unlimited review. *State v. Carr*, 314 Kan. 615, 627, 502 P.3d 546 (2022).

The State counters, and Gabler concedes, that he did not raise this issue below. Even so, Gabler asserts this court should address his claim for the first time on appeal because he presents a question of law on proved or admitted facts that would be finally determinative of his case and because reviewing the claim is necessary to serve the ends of justice and prevent the denial of a fundamental right.

Generally, issues not raised below, even those of constitutional stature, cannot be raised for the first time on appeal. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). There are exceptions to that general rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). An appellate court's decision to apply one of these exceptions and accept review is a prudential one; even if an exception applies, this court need not review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). As our court has recently stated:

"There is a good reason for this rule. Appellate courts are designed to review decisions made by the trial courts, not to serve as forums for introducing new arguments or evidence. This principle ensures that trial courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party." *State v. Jelinek*, 66 Kan. App. 2d 158, 163, 577 P.3d 662 (2025).

We exercise our prudential authority and decline to review Gabler's claim. Although preservation exceptions may apply, the State makes a good point that Gabler had ample opportunity to raise this issue below—especially where a major component of this case was the required element of a "dating relationship." The issue was foreseeable and could have been addressed below. And even if this court has unlimited review over the claim, we would have benefited from the parties' arguments being tested below with a ruling from the district court on the merits of the claim.

Affirmed.